# EXHIBIT B

FILED

2017 NOV -9 AM 11: 57

IN SUPERIOR COURT
JEFFERSON COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR JEFFERSON COUNTY

STEPHEN PATCH,

          Plaintiff,

vs.

CITY OF PORT TOWNSEND; PORT TOWNSEND POLICE DEPARTMENT; AND OFFICER PATRICK FUDALLY,

          Defendants.

No. 17-2-00211-16

**COMPLAINT**

The Plaintiff, by and through his attorney, Chalmers C. Johnson, hereby makes the following claims and allegations:

## I. PARTIES

1.1    The plaintiff, Stephen Patch (hereinafter referred to as Plaintiff), is a resident of Jefferson County, Washington. He resided in Kitsap County, Washington at all times relevant and material to this complaint.

1.2    Defendant, Officer Patrick Fudally, is an individual who, on December 2, 2014, was a police officer employed by the City of Port Townsend in the Port Townsend Police Department.

1.3    The City of Port Townsend and Port Townsend Police Department are municipal entities operating in the City of Port Townsend, Washington, in Jefferson County.

## II. JURISDICTION AND VENUE

2.1    Plaintiff is a resident of Jefferson County, Washington.

2.2    The Defendants is residents of Jefferson County, Washington.

Complaint - 1

GSJONES LAW GROUP, P.S.
1155 Bethel Avenue
Port Orchard, WA 98366
Phone: (360) 876-9221
Fax: (360) 876-5097

2.3 All acts of the above-identified Defendants giving rise to liability in this complaint occurred in Jefferson County, Washington.

2.4 The parties to this lawsuit are within the jurisdiction of this Court.

2.5 Venue is properly in Jefferson County, as the events giving rise to the claims in this case occurred in Jefferson County and Defendants reside in the county.

### III. FACTS

3.1 Sections I and II, above, are hereby incorporated, verbatim.

3.2 he Plaintiff, Stephen Patch, is the caregiver for his adult son, who was, in December of 2014, both physical disabled by tetraplegia, and suffering from emotional disabilities.

3.3 The Plaintiff and his son moved into an apartment in Port Townsend together in in 2012, and were living in that apartment in December of 2014.

3.4 From 2012 through 2014, Plaintiff had been required to call on the Port Townsend Police Department for help on occasions when his son's behavior became belligerent, physically, towards Plaintiff and others, and unmanageable for Plaintiff alone.

3.5 On more than one occasion, when the Port Townsend Police Department officers arrived at Plaintiff's request, Plaintiff son, suffering from the effects of his emotional difficulties, acted to provoke or attack the police officers although he was wheelchair-bound due to tetraplegia.

3.6 On more than one occasion, officers from the Port Townsend Police Department told Plaintiff that Plaintiff should do his best to keep his son calm during these outbursts, and only call the police if he felt his son's aggressive behavior would escalate without police intervention.

3.7 On the evening of December 2, 2014, Plaintiff's son's professional caregiver was preparing to leave for the evening and witnessed Plaintiff's son refusing to accept his medications from Plaintiff and began to becoming loud and verbally abusive towards Plaintiff.

3.8 Plaintiff walked out of the apartment to allow the situation to de-escalate, and the caregiver

Complaint - 2

GSJONES LAW GROUP, P.S.
1155 Bethel Avenue
Port Orchard, WA 98366
Phone: (360) 876-9221
Fax: (360) 876-5097

| | |
|---|---|
| 1 | witnessed Plaintiff's son follow Plaintiff to the door in his wheelchair and loudly yell at Plaintiff. |
| 2  3.9 | Concerned, the caregiver contacted her husband and told him about the situation. |
| 3  3.10 | The Caregiver's husband sent a text message to the Port Townsend Police Department, reporting the incident as an assault by Plaintiff's son against Plaintiff, with the Plaintiff being the victim. |
| 5  3.11 | Eventually, Plaintiff's tactic of standing outside of the apartment and not responding to his son's aggressive rant was effective, and his son stopped his tirade and returned, peacefully, to the interior of the apartment. |
| 9  3.12 | Two officers arrived at Plaintiff's apartment after his son had retreated into the apartment and all was quiet. |
| 11  3.13 | One officer who came to Plaintiff's apartment that night was Defendant Fudally. |
| 12  3.14 | Plaintiff was surprised to see the officers, as he had not called for assistance, and explained to them that he had been able to de-escalate the situation, showed the officers that he was uninjured, and stated that he did not need assistance. |
| 16  3.15 | The officers then told Plaintiff that they had received a telephone call from one of his neighbors, reporting that Plaintiff had been assaulted by his son. |
| 18  3.16 | This statement was untrue. |
| 19  3.17 | Plaintiff explained to the officers, once again, that there had been no assault and showed the officers that he was uninjured. |
| 22  3.18 | The officers then insisted that they had received "several" calls from neighbors, reporting that Plaintiff had been assaulted. |
| 24  3.19 | This was also untrue. |
| 25  3.20 | The officers insisted on entering Plaintiff's apartment and confronting Plaintiff's son. |
| 3.21 | Plaintiff explained to the officers that he had just managed to calm his son down after an outburst, and that the officers coming into the apartment to confront him this would only cause |

witnessed Plaintiff's son follow Plaintiff to the door in his wheelchair and loudly yell at Plaintiff.

3.9 Concerned, the caregiver contacted her husband and told him about the situation.

3.10 The Caregiver's husband sent a text message to the Port Townsend Police Department, reporting the incident as an assault by Plaintiff's son against Plaintiff, with the Plaintiff being the victim.

3.11 Eventually, Plaintiff's tactic of standing outside of the apartment and not responding to his son's aggressive rant was effective, and his son stopped his tirade and returned, peacefully, to the interior of the apartment.

3.12 Two officers arrived at Plaintiff's apartment after his son had retreated into the apartment and all was quiet.

3.13 One officer who came to Plaintiff's apartment that night was Defendant Fudally.

3.14 Plaintiff was surprised to see the officers, as he had not called for assistance, and explained to them that he had been able to de-escalate the situation, showed the officers that he was uninjured, and stated that he did not need assistance.

3.15 The officers then told Plaintiff that they had received a telephone call from one of his neighbors, reporting that Plaintiff had been assaulted by his son.

3.16 This statement was untrue.

3.17 Plaintiff explained to the officers, once again, that there had been no assault and showed the officers that he was uninjured.

3.18 The officers then insisted that they had received "several" calls from neighbors, reporting that Plaintiff had been assaulted.

3.19 This was also untrue.

3.20 The officers insisted on entering Plaintiff's apartment and confronting Plaintiff's son.

3.21 Plaintiff explained to the officers that he had just managed to calm his son down after an outburst, and that the officers coming into the apartment to confront him this would only cause

GSJONES LAW GROUP, P.S.
1155 Bethel Avenue
Port Orchard, WA 98366
Phone: (360) 876-9221
Fax: (360) 876-5007

1 his son to engage in more provocative behavior, as had been evidenced with his past interactions
2 with officers.

3.22 The officers who arrived at the scene were familiar with Plaintiff's son's behavior and his past history of "charging" officers in his motorized wheelchair when they confronted him.

3.23 One of the officers stated that the nurse should consider disabling the motorized wheelchair, leaving Plaintiff's son immobile, so that he could not "charge" anyone.

3.24 The officers insisted on entering the apartment to confront Plaintiff's son despite Plaintiff's continuing pleas that they leave the son alone.

3.25 One officer, Defendant Fudally, began to enter the apartment through the front door to confront Plaintiff's son.

3.26 Plaintiff, realizing that the officer was intent on entering the apartment to confront his son, and that this would certainly re-kindle his son's behavior and cause an outburst, if not an incident resulting in his son assaulting an officer, was standing in the breezeway when he turned his back on the officers, said "God Damn" and, in frustration, smacked his fist lightly against the outer wall of the apartment.

3.27 Plaintiff did not cause any damage to the wall or to his hand.

3.28 Officer Fudally, who had been about to enter Plaintiff's apartment, without having issued any instructions to Plaintiff, and without any warning at all, rushed from the apartment door to Plaintiff, whose back was turned to Officer Fudally.

3.29 From behind Plaintiff, Officer Fudally wrapped his arms around Plaintiff's arms and his body, pinning Plaintiff's arms to his side, and propelled Plaintiff, face first, into the apartment wall.

3.30 Officer Fudally, having pinned Plaintiff's arms to his sides used his body weight and momentum to propel Plaintiff, face first, into the apartment wall.

3.31 Because Officer Fudally had pinned Plaintiff's arms to his sides in a "bear hug" while flinging

Complaint - 4

Plaintiff into the wall, Plaintiff was unable to protect his face, and hit the wall nose first and suffered severe injury.

3.32 After having smashed Plaintiff's face into the apartment wall, Officer Fudally, who still had his arms around Plaintiff, pinning his arms to his sides, rotated the Plaintiff clockwise about 90 degrees and, using his body weight, forced Plaintiff to fall forward onto the concrete walkway, face first, with the officer on top of him, accelerating the fall.

3.33 Officer Fudally bore the Plaintiff all the way to the pavement, where Plaintiff landed, again, face first, without the benefit of his arms for protection or to break the fall, breaking and dislocating Plaintiff's wrist and causing severe injury to Plaintiff's face.

3.34 Plaintiff, who had cried out in pain when Officer Fudally broke his wrist and smashed his face into the concrete, was still pinned to the ground as Officer Fudally lay his entire body weight on Plaintiff's prone form.

3.35 Once he had broken Plaintiff's wrist and smashed his face into the concrete, Officer Fudally, still lying on top of the injured man, used one hand to grab the Plaintiff by the head and force Plaintiff's face into the concrete walkway and into the pool of Plaintiff's blood which was quickly accumulating around his nose, causing Plaintiff to have difficulty breathing as each breath through his nose drew his own blood into his lungs.

3.36 As Plaintiff lay, immobile, under Officer Fudally, who was pressing his face into a pool of Plaintiff's own blood, the officer began yelling loudly "stop struggling!"

3.37 Plaintiff, who was not trying and would not have been able to struggle, responded by asking "what are you doing?" before telling the officer he was badly injured.

3.38 Eventually, Officer Fudally got off of the Plaintiff and released his hold on the Plaintiff's head.

3.39 Plaintiff was never put under arrest on December 2, 2014.

3.40 Plaintiff was never handcuffed on December 2, 2014.

Complaint - 5

GSJONES LAW GROUP, P.S.
1155 Bethel Avenue
Port Orchard, WA 98366
Phone: (360) 876-9221
Fax: (360) 876-5097

3.41 Plaintiff was never charged with any crime regarding the events of December 2, 2014.

3.42 When Plaintiff's son confronted Officer Fudally, demanding to know why they had attacked his father, Officer Fudally told him that he had perpetrated the attack for Plaintiff's own safety.

3.43 The events of the evening of December 2, 2014 herein described were recorded by police officer's dash board cameras.

3.44 The "711 rear Cam" recorded Officer Fudally at 10:40pm, stating the following:

3.45 After the events of the evening of December 2, 2014, Officer Fudally and the Port Townsend police department lied about what had happened that night in a written report, falsely reporting that Plaintiff had brandished his fists at officers and had attacked them, and stating that officer Fudally had acted to protect the officers from an "imminent attack" from the Plaintiff

## IV. FOR A FIRST CAUSE OF ACTION
## NEGLIGENCE
### Against The City of Port Townsend, Port Townsend Police Department and Officer Patrick Fudally

4.1 Sections I, II, and III, above, are hereby incorporated, verbatim.

4.2 The Defendants owed Plaintiff a duty of care, which included refraining from taking actions which would injure the Plaintiff while Plaintiff was under the control or influence of officers and, if physical contact were necessary to protect the Plaintiff from harm, to take precautions to avoid injuring Plaintiff while restraining him.

4.3 Defendants were negligent and breached a duty of care when Officer Fudally pinned Plaintiff's arms to his sides, forced Plaintiff, face first, into a wall, caused Plaintiff to fall face first onto the pavement with the officer landing on top of the Plaintiff, and pressed Plaintiff's face into the concrete of the walkway.

4.4 As a direct and proximate result of the Defendants' negligent acts and omissions, the Plaintiff suffered severe bodily injury, emotional distress, pain and suffering, disfigurement, emotional

GSJONES LAW GROUP, P.S.
1155 Bethel Avenue
Port Orchard, WA 98366
Phone: (360) 876-9221

damages, loss of enjoyment of life, and economic damages.

## V. FOR A SECOND CAUSE OF ACTION
## NEGLIGENT SUPERVISION AND TRAINING
### Against the City of Port Townsend and The Port Townsend Police Department

5.1 Sections I through IV are hereby incorporated, verbatim.

5.2 The Defendants, City of Port Townsend and the Port Townsend Police Department are responsible for enacting and enforcing policies and procedures for their police officers sufficient to protect the public from unnecessary harm caused by the officers while conducting their duties.

5.3 Defendants owe a duty to all citizens who enter into the jurisdiction of the City of Port Townsend Police Department, including the Plaintiff, to adequately train and supervise its officers so that they can and will avoid causing unnecessary harm to citizens in carrying out their duties as police officers.

5.4 Defendants negligently breached its duty by failing to properly train Defendant Officer Fudally as to when it is appropriate to use physical force against an alleged victim of a crime who is not under arrest, and how to avoid using unnecessary force or avoid injuring a citizen when force of any kind is deemed necessary.

5.5 Defendant negligently breached its duty to the Plaintiff by failing to provide adequate supervisor for Defendant Officer Fudally to prevent him from injuring the Plaintiff.

5.6 As a direct and proximate result of the Defendants' negligent acts and omissions, the Plaintiff suffered severe bodily injury, emotional distress, pain and suffering, disfigurement, emotional damages, loss of enjoyment of life, and economic damages.

## VII. FOR A THIRD CAUSE OF ACTION
## 42 U.S.C. 1983
### Against Officer Patrick Fudally

5.1 Sections I, II, III, and IV of this Complaint are hereby incorporated, verbatim.

5.2 On the evening of December 2, 2014, Defendant, Officer Fudally, was in uniform and working

Complaint - 7

GSJONES LAW GROUP, P.S.
1155 Bethel Avenue
Port Orchard, WA 98366
Phone: (360) 876-9221

as a police officer.

5.3   On the evening of December 2, 2014, Officer Fudally was acting under color of State Law, when he arrived at Plaintiff's home and insisted on entering Plaintiff's home.

5.4   On the evening of December 2, 2014, Officer Fudally was acting under color of State Law, when he physically assaulted the Plaintiff.

5.5   Defendant, Officer Fudally, while acting under color of state law (his authority as a police officer) deprived Plaintiff of a federally protected right (Plaintiff's right to be free from unreasonable search and seizures guaranteed by the Fourth Amendment to the constitution) by using unnecessary and excessive force against the Plaintiff when there was no cause to do so.

5.6   As a direct and proximate result of Officer's Fudally's unlawful actions, the Plaintiff:

a) Suffered severe personal injury;

b) Was required to submit to medical treatment and incur the costs thereof;

c) Suffered severe anxiety, fear, emotional distress, pain, suffering, limitations, and a loss of enjoyment of life;

d) Suffered consequential losses foreseeably arising from the injury;

e) Incurred attorney's fees and costs of pursuing this action.

5.7   Defendant Fudally's actions in attacking the Plaintiff and injuring him were reckless and callously indifferent to the Plaintiff and his federally protected rights.

5.8   Defendant Fudally's actions in attacking Plaintiff and injuring him were motivated by an evil intent.

5.9   Plaintiff is entitled to an award of punitive damages against Defendant Officer Fudally pursuant to 42 U.S.C. 1983.

5.10  Plaintiff is entitled to an award of attorney's fees and costs against Defendant Officer Fudally pursuant to 42 U.S.C. 1983.

Complaint - 8

## VI. DAMAGES

6.1 Sections I, II, III, IV, and V of this Complaint are hereby incorporated, verbatim.

6.2 As a direct and proximate result of the Defendants' negligence and actions in violation of 42 U.S.C. 1983, the Plaintiff:

    a) Suffered severe personal injury;

    b) Suffered severe emotional distress, mental anguish, limitations and loss of enjoyment of life;

    c) Was required to undergo medical treatment for injuries;

    d) Incurred the cost of medical treatment;

    e) Suffered consequential damages;

    f) Incurred attorney's fees and costs of this action.

6.3 The Plaintiff is entitled to an award of damages against the Defendants, including special damages and general damages against both defendants, jointly and severally, and attorney's fees, costs and exemplary or punitive damages against Defendant Fudally pursuant to 42 U.S.C. 1983.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for an award of damages against the Defendants as follows:

7.1 Special, Consequential, and General damages against all defendants, jointly and severally;

7.2 Statutory fees and costs under Washington law against all defendants, jointly and severally;

7.3 Attorney's fees and costs of this action, pursuant to 42 U.S.C. 1983 against Defendant Fudally;

7.4 Punitive damages, pursuant to 42 U.S.C. 1983 against Defendant Fudally.

7.5 For such other and further relief as this Honorable Court deems just and equitable and as may be allowed by applicable statutory authority.

_____
Chalmers C. Johnson, WSBA #40180
Attorney for the Plaintiff

November 8, 2017

Complaint - 9

GSJONES LAW GROUP, P.S.
1155 Bethel Avenue
Port Orchard, WA 98366
Phone: (360) 876-9221
Fax: (360) 876-5097